***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Commission, and that the Commission has jurisdiction of the parties and of the subject matter.
2. It is stipulated that all parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. The employee-plaintiff is Deitra Maynard.
4. The defendant-employer is Black Decker and ESIS was the carrier on the risk at all relevant times.
5. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on the 12th day of August 1999, the date of injury.
6. On August 12, 1999, the employee-plaintiff's claim was accepted as compensable pursuant to a Form 60 agreement, dated July 7, 2000.
7. The employee-plaintiff's average weekly wage at the time of her injury by accident was $406.84 per week, yielding a compensation rate of $271.24.
8. The employee-plaintiff was out of work from January 4, 2000 through January 23, 2000. The employee-plaintiff returned to work on January 24, 2000.
9. The parties stipulated into evidence as Stipulated Exhibit #1, the Pre-Trial Agreement.
10. The parties stipulated into evidence as Stipulated Exhibit #2, a packet of plaintiff's medical records.
11. The parties stipulated into evidence as Stipulated Exhibit #3, I.C. Form 33R, dated April 6, 2001, Form 33, dated March 5, 2001, Form 60, dated July 7, 2000, Form 28, dated July 7, 2002, and a Form 60 dated February 28, 2000.
12. The depositions of Dr. Glen Stubin, Dr. Arthur L. Bradford and Nancy Stewart are a part of the evidentiary record.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was born on January 21, 1968 and was 33 years old at the time of hearing. She completed high school and had worked in various retail positions up until her employment with the defendant, which began on July 13, 1998.
2. On August 12, 1999, plaintiff was employed as a saw inspector. On August 12, 1999, the plaintiff was working in that capacity when she sustained an occupational disease on 12 August 1999 that was accepted as compensable pursuant to a Form 60, dated July 7, 2000.
3. Plaintiff had begun having problems with her hands in August 1999 and sought medical treatment with the company physician at US Healthworks on September 12, 1999. US Healthworks provided conservative care consisting of medications, splinting of both wrists and physical therapy. US Healthworks suggested light duty work and no lifting over 10 pounds. By December 1999 U.S. Healthworks referred plaintiff to Dr. Glenn Subin orthopedic surgeon. Dr. Subin saw plaintiff on December 8, 1999. He felt plaintiff had bilateral carpal tunnel syndrome. Dr Subin attempted a course of conservative care, which was not successful. At which point Dr Subin recommended CTS releases on both wrists. He performed right carpal tunnel decompression on January 4, 2000 and left carpal tunnel decompression on January 11, 2000. Following her surgery plaintiff returned to work on light duty for defendant-employer on January 24, 2000. While on light duty, plaintiff worked in the packing department for defendant-employer. In February 2000, plaintiff returned to working her regular duty job as a circular saw inspector.
4. Plaintiff's job as a saw inspector required her to lift, push and pull circular saws weighing 12 to 18 lbs., inspecting anywhere from 600 and up to approximately 900 saws per eight hour shift.
5. After plaintiff's return to her regular duty job, she continued to experience pain and problems with her hands swelling, and these problems progressively grew worse. Due to her ongoing problems, plaintiff returned to see Dr. Subin on April 14, 2000.
6. When plaintiff followed up with Dr. Subin in April and May 2000, it was noted that plaintiff continued to experience pain and discomfort in her hands, and that additional medical treatment was needed. Plaintiff continued to be treated by Dr. Subin and he ultimately recommended, due to plaintiff's continued problems with her hands, that she transfer to or change jobs with defendant-employer to a less strenuous or repetitive job. Plaintiff informed defendant-employer of Dr. Subin's recommendations, however defendant-employer did not move plaintiff nor offer to move plaintiff to a less strenuous or less repetitive duty job. Plaintiff's condition continued to worsen and by February 2001 plaintiff was having ongoing pain, swelling and numbness in both of her hands.
7. Due to plaintiff's ongoing pain and discomfort, and her difficulties with performing her regular job duties, plaintiff sought out the care of her family physician, Dr. Arthur Bradford, on February 21, 2001. Plaintiff went to see Dr. Bradford due to her increasing problems, which involved her hands, wrists and elbows, and because she could not get in to see Dr. Subin, her authorized orthopedic physician until March 7, 2001.
8. Plaintiff was taken out of work completely by Dr. Bradford on February 21, 2001, and provided a written note to that effect. This note was provided to the Employer representative, Judy Lockamie. Ms. Lockamie did not honor the note, as it was not from "their" doctor.
9. Plaintiff discussed with Ms. Lockamie the fact that she could not get in to see Dr. Subin until March 7, 2001.
10. Plaintiff returned to see Dr. Bradford on February 26, 2001, and was continued out of work through March 9, 2001. Plaintiff again took this note to Ms. Lockamie, who again did not honor the note and instead instructed plaintiff to see the company doctor at U.S. Healthworks.
11. On Tuesday, February 27, 2001, plaintiff was seen by Dr. James Livingston, company physician with U.S. Healthworks. On February 27, 2001, Dr. Livingston placed plaintiff under limited and very specific restrictions. These restrictions included no lifting at all, no forceful pushing or pulling, no reaching or overhead work, and no repetitive hand/wrist motion with either hand. Following the very severe restrictions placed upon plaintiff's return to work on February 28, 2001, which were given by defendant-employer's company physician, the defendant-employer still did not provide plaintiff with nor offer plaintiff any light duty modified work. The defendant-employer does have light duty jobs available, however, defendant- employer does not have any jobs, which do not require some lifting. The severe restrictions placed upon plaintiff's return to work with the defendant-employer on February 28, 2001 were tantamount to plaintiff being taken out of work, due to conditions related to her compensable occupational disease of August 12, 1999.
12. Plaintiff returned to see Dr. Livingston, at U.S. Healthworks, on March 6, 2001. On March 6, 2001 Dr. Livingston continued plaintiff under the same severe working restrictions he had placed plaintiff under on February 27, 2001. The defendant-employer again did not provide plaintiff with nor offer to her any light duty modified job.
13. Plaintiff then saw Dr. Glen Subin, the authorized orthopedic surgeon on March 7, 2001. Dr. Subin diagnosed plaintiff as having left wrist pain with deQuervains extensor tenosynovitis and extensor tendonitis of the right forearm. Plaintiff's condition had become progressively worse. He provided cortisone injections, started her on a steroid treatment, provided Vioxx for pain and cock-up splints for her wrists. He again recommended that she not return to repetitive work at defendant-employer.
14. On the same day, March 7, 2001, plaintiff saw Dr. Mark Brenner, orthopedic surgeon of the Pinehurst Surgical Clinic. Dr. Brenner's impression was similar to that of Dr. Subin. Dr. Brenner diagnosed bilateral extensor tenosynovitis with elements of deQuervains tenosynovitis. Dr. Brenner recommended permanent restrictions of avoiding any repetitive pushing, pulling, gripping, pinching, fingering and avoidance of production-related job demands, such as plaintiff's job at defendant- employer.
15. On March 5, 2001, plaintiff was informed by defendant-employer that she was being terminated for absenteeism. Plaintiff's termination was based in part upon absences of February 26, February 27, February 28, March 1, and March 2, 2001. These were dates that plaintiff was taken out of work by her family physician Dr. Bradford, and had been placed under severe work restrictions by Dr. Livingston, defendant-employer's company physicians, and yet had not been provided or offered light duty modified work by defendant-employer.
16. Plaintiff has sought work with various employers since her termination, but has been unable to find work within her physical limitations.
17. Plaintiff has continued to treat with Dr. Bradford for carpel tunnel syndrome and tendonitis of both upper arms. Plaintiff continues to have pain and difficulty with gripping, pinching, pulling, twisting and turning, all activities that were involved in her job at defendant-employer. Dr Bradford and Dr Subin are both of the opinion that plaintiff cannot perform the functions of her job at defendant-employer. Plaintiff is in need of continuing medical care.
18. Following plaintiff's termination from defendant-employer, which was made effective on March 13, 2001, plaintiff has not returned to work with defendant-employer or with any other employer.
19. As a direct consequence of plaintiff's compensable occupational disease of August 12, 1999, and her resulting medical problems, plaintiff was disabled from earning the wages she previously received with defendant-employer, or from any other employment from March 13, 2001, and continuing.
20. Defendant offered the testimony of Nancy Stewart, a vocational rehabilitation counselor specialist, as evidence to show that plaintiff is capable of employment. On the behalf of defendant, Ms. Stewart was requested to identify available jobs in plaintiff's labor market. In her efforts to locate available jobs for plaintiff, she stated that she had not talked with plaintiff, had not reviewed any of plaintiff's medicals, had not had any jobs approved by plaintiff's physician, and that her source of information concerning plaintiff was provided to her by defendant's counsel. Defendants have failed to show that jobs are available to plaintiff, and that plaintiff is capable of getting those jobs taking into account her physical and vocational limitations, and that the jobs would enable her to earn wages.
21. Plaintiff is entitled to have defendant provide all medical treatment necessitated by her compensable occupational disease of August 12, 1999 and continuing, including all treatment recommended by Dr. Subin and Dr. Bradford.
22. Plaintiff is capable to perform at some level of employment given time, sufficient rehabilitative assistance, and work offered within the work restrictions given by Dr. Subin,
23. Plaintiff's average weekly wage is $406.84, yielding a compensation rate of $271.24.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's development of carpal tunnel syndrome was due to causes and conditions of and peculiar to her employment with defendant-employer and is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. § 97-53(13).
2. As a result of her compensable occupational disease, plaintiff is entitled to temporary total disability compensation at a weekly rate of $271.24 based upon her average weekly wage of $406.84 from March 13, 2001, and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant provide all medical treatment necessitated by her compensable occupational disease of August 12, 1999 and continuing so long as such treatment should provide relief, effectuate a cure or lessen plaintiff's period of disability, including all treatment recommended by Dr. Subin and Dr. Bradford. N.C. Gen. Stat. §§ 97-2(19) 97-25.
4. Plaintiff is entitled to have defendant provide her with vocational rehabilitation services in order to assist her in her efforts at achieving functional capabilities, which will enable her to reach a level of stable employability, and then to assist her at locating suitable employment within her work restrictions given by Dr. Subin. N.C.G.S. §§ 97-2(19) 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at a rate of $271.24 per week from March 13, 2001 to the present, and continue until such time as plaintiff returns to work, or until so ordered by the Commission. Such amount that has already accrued shall be paid in a lump sum, and all amounts shall be subject to a reasonable attorneys' fee hereinafter approved in the following paragraph.
2. A reasonable attorneys' fee of twenty-five percent (25%) of the compensation due plaintiff in the preceding paragraph of this award is approved for plaintiff's counsel and shall be paid by defendant as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph #1 of this award which has accrued to date shall be paid directly to plaintiff's counsel. Plaintiff's counsel shall receive every fourth check of all future compensation.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury so long as it tends to effect a cure and give relief or lessen plaintiff's disability. These medical expenses shall include continuing treatment of plaintiff as recommended by Dr. Subin and Dr. Bradford.
4. Defendant shall provide plaintiff with vocational rehabilitation services in order to assist her in her efforts at achieving functional capabilities, which will enable her to reach a level of stable employability, and then to assist her at locating suitable employment within her work restrictions given by Dr. Subin.
5. Defendant shall pay the costs of this action.
This the 24th day of February 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN